**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| **ZURICH AMERICAN INSURANCE COMPANY, a corporation,** | ) <br> ) <br> ) |
| **Plaintiff,** | ) <br> ) |
| v. | ) <br> ) **CASE NO.: 2:07-cv-216-MEF** |
| **JUNIORETTE GRIFFIN SMITH, as administratrix of the estate of ROGER DALE SMITH, DECEASED,** | ) <br> ) <br> ) <br> ) |
| **Defendant.** | ) <br> ) |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF
PLAINTIFF ZURICH AMERICAN INSURANCE COMPANY**

COMES NOW the plaintiff, Zurich American Insurance Company ("Zurich"), and submits this brief in support of its Motion for Summary Judgment.

**INTRODUCTION**

This declaratory judgment action presents a clear and straightforward issue for the Court's determination: whether or not the Defendant's decedent, Roger Dale Smith ("Smith"), was an insured according to the terms of the business automobile insurance policy issued by Zurich (the "Zurich policy") to Smith's employer, Boan Contracting Company, Inc., ("Boan"), under which policy the Defendant has made a claim for uninsured/underinsured motorist ("UM") benefits. The policy's terms and the undisputed facts of the case make clear beyond any doubt that Smith was not an insured under that policy. As a result, he was not entitled to the UM benefits claimed on his behalf by the Defendant.

There is no dispute regarding the limited number of material facts in this case. This matter arises out of the claim made by the Defendant on behalf of Smith's estate for UM

benefits under the Zurich policy. Smith died as the result of a traffic accident on September 8, 2005. At the time of his fatal accident, Smith, a Boan employee, was operating his own privately owned vehicle. As such, he did not fall within the policy's definition of an "insured" for purposes of the policy's Liability Coverage section. Under Alabama law, liability coverage under an automobile insurance policy is a pre-condition for the existence of UM coverage under that policy. Smith therefore was not entitled to UM benefits under the Zurich policy, and Zurich properly denied the Defendant's claim for UM benefits.

Moreover, at the time of his accident, Smith was not an insured under the Uninsured Motorist endorsement of the Zurich policy because he was not occupying a "covered 'auto'" or "a temporary substitute for a covered 'auto'" as defined by that endorsement. "Covered auto" for purposes of the UM coverage provided by the Zurich policy included only automobiles owned by Boan or another named insured. Smith owned the car in question and was not a named insured, so the policy did not provide the UM coverage claimed by the Defendant.

**STATEMENT OF UNDISPUTED FACTS**[1]

 **A.** **The Zurich policy**

Zurich issued policy number BAP 4896511-02 to Boan as the named insured with a policy period from June 1, 2005, through June 1, 2006. (Jt. Stip. of Facts, ¶¶ 6-7). Subject to the terms and limitations it contained, the Zurich policy provided Boan with business automobile coverage, including both liability and UM coverages. The policy's declarations page provides:

> This policy provides only those coverages where a charge is shown in the premium column below. **Each of these coverages will apply only to those "autos" shown as "covered autos."** "Autos" are shown as "covered autos" for a

---

[1] On July 20, 2007, the parties filed with the Court a Joint Stipulation of Facts, which Zurich hereby adopts and incorporates herein by reference. A copy of that Joint Stipulation is attached to Zurich's Motion for Summary Judgment as "Exhibit 1."

2

> particular coverage by the entry of one or more of the symbols from the COVERED AUTOS section of the Business Auto Coverage Form next to the name of the coverage.

(Zurich policy (attached as Exhibit A to Joint Stipulation of Facts), Business Auto Part Declarations) (emphasis added). Immediately below this language, the declarations page designates the "covered autos" for liability coverage with symbol "1" and the "covered autos" for UM coverage with the symbol "2." *Id.* According to the COVERED AUTOS section of the Business Auto Coverage Form, the symbol "1" designates "Any 'auto'" as a covered auto for liability coverage, and the symbol "2" designates for UM coverage **"Only those 'autos' you own**. . . .This includes those 'autos' you acquire ownership of after the policy begins." (Zurich policy, Business Auto Coverage Form, p. 1) (emphasis added). The policy defines "you" to mean the named insured, Boan. (Zurich policy, Business Auto Coverage Form, p. 1).

In pertinent part, the Zurich policy's Liability Coverage section provides as follows regarding who is an insured under the policy, where "you" refers to Boan:

1. **Who is an Insured**

    The following are "insureds":

    . . . .

    b. Anyone else while using with your permission a covered "auto" you own, hire or borrow **except**:

        (1) The owner or anyone from whom you hire or borrow a covered "auto." This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

        (2) **Your "employee" if the covered "auto" is owned by that "employee"** or a member of his or her household.

(Zurich policy, Business Auto Coverage Form, § II, A, 1, b) (emphasis added). Thus, since Smith was indisputably an "employee" of Boan who was at the time of the accident driving an

3

"auto" which was "owned by that 'employee' [Smith]," he clearly was not an insured under the liability coverage part of the policy

The policy sets forth a different definition of "insured" for purposes of the UM coverage it provides. The policy's Alabama Uninsured Motorists Coverage Endorsement states that the term "insured" includes:

a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

(Zurich policy, Alabama Uninsured Motorists Coverage Endorsement, § B, 2). Again, for UM purposes, only autos owned by Boan are "covered autos." (Zurich policy, Business Auto Coverage Form, p. 1). Thus, since Smith was indisputably driving a truck owned by him, and not by Boan, at the time of the accident, he clearly was not an insured under the UM coverage part of the policy.

### B. The Decedent's Accident

On Thursday, September 8, 2005, Smith was involved in a traffic accident that resulted in his death. (Jt. Stip. Of Facts, ¶ 8). Smith, a Boan employee at the time, was traveling in his own truck on Alabama Highway 87 through Geneva County, Alabama, when his vehicle collided with a vehicle being driven by Sylvia Hornsby Carter and owned by Derrick Carter. (Jt. Stip. Of Facts, ¶¶ 8, 10). Smith was operating the truck in which he was injured in the accident, and he was the owner of that truck. (Jt. Stip. of Facts, ¶ 11-12). Since Smith, not Boan, was the owner of the vehicle involved in the accident, Smith did not come within the definition of "insured" set out in the Zurich policy's liability coverage part as quoted above. (Zurich policy, Business Auto Coverage Form, § 11, A, 1, b). Smith could not be an insured under that coverage part because the truck he was driving at the time of his accident was not one Boan "owned, hired,

4

or borrowed." (*See* Zurich policy, Businesses Auto Coverage Form, § II, A, 1, b). Even if Boan had hired or borrowed Smith's car from him that day, Smith was not an insured under the policy's Liability Coverage section because he was an employee of Boan and was the owner of the vehicle in question. (See Zurich policy, Business Auto Coverage Form, § II, A, 1, b).

At the time of the accident, Smith was employed as a foreman by Boan (Boutwell dep., pp. 7, 22).[2] For several months prior to the accident, he had been working on a Boan project in Jacksonville, Florida. (Boutwell dep., p. 9). Smith lived in Covington County, Alabama, but he had been staying in Jacksonville during the work-week and returning home to Alabama when the Boan crew temporarily stopped work at the site. (Boutwell dep., pp. 9-10). His normal traveling procedure had been to drive with another Boan employee, Doug Boutwell, to Jacksonville in a Boan company truck and to drive back to Alabama with Boutwell in the same truck at the end of the week. (Boutwell dep., pp. 10-12). During the week of the accident, however, Smith had deviated from this procedure. Instead of driving from home to the job site in Florida at the beginning of the week, he had driven to Louisiana in order to visit relatives. (Defendant dep., pp. 24-25).[3] The purpose of this trip was entirely personal and did not involve or advance the interests of Boan in any way: Smith was visiting his son and daughter-in-law, who lived in Louisiana and who were expecting twins. (Defendant dep., pp. 24-25). He wanted to visit them in Louisiana before going to the Florida job site that week and to have the flexibility to leave the job site in Florida and return to Louisiana for the birth of the twins whenever that occurred. (Defendant dep., p. 26; Boutwell dep., p. 13, 14). Smith therefore did not drive a Boan company truck, as he had done in previous weeks. Instead, he drove his own truck from Alabama to

---

[2] As used herein, "Boutwell dep." refers to the March 5, 2008, deposition of Doug Boutwell, the transcript of which is attached to Zurich's Motion for Summary Judgment.

[3] As used herein, "Defendant dep." refers to the March 5, 2008, deposition of the Defendant, Juniorette Griffin Smith, the transcript of which is attached to Zurich's Motion for Summary Judgment.

Louisiana and, later in the week, from Louisiana to the Boan job site in Jacksonville, before making the trip back home to Alabama in his own truck on the day of the fatal accident. (Jt. Stip. of Facts, ¶ 12; Defendant dep., pp. 24-25, 28-29).

The Boan company truck Smith had previously driven to the Florida job site was in service at that time. There was no mechanical or other physical reason why Smith could not have driven it. (Boutwell dep., p. 17; Defendant dep., p. 31). Indeed, Boutwell drove the Boan company truck ordinarily used by Smith from Alabama to Florida that week and has testified that there was no mechanical problem affecting it at the time (Boutwell dep., p. 24). Smith's own personal truck therefore did not constitute a temporary replacement for the Boan company truck, since the Boan truck was not out of service. (*See* Zurich policy, Alabama Uninsured Motorists Coverage Endorsement, § B.2). Boan did not reimburse Smith or pay him mileage for the use of his personal truck that week. (Scott dep., p. 38).[4]

At the time of the accident, Smith was returning home from work. (Boutwell dep., p. 30). Defendant has testified that Smith had no other purpose or objective for that trip and had not expressed any intention or need to do anything for his employer on the way home. (Defendant dep., p. 34).

**C.**     **Procedural History**

On May 3, 2006, Defendant, as administratix of Smith's estate, notified Zurich that she intended to make a claim for underinsured and/or uninsured motorist coverage benefits under any and all automotive fleet policies issued by Zurich to Boan. (Jt. Stip. of Facts, ¶¶ 3, 13). On June 14, 2006, Defendant made demand on Zurich to settle the claim of Smith's estate under the Zurich policy for "policy limits in the amount of $1,000,000." (Jt. Stip. Of Facts, ¶

---

[4] As used herein, "Scott dep." refers to the March 5, 2008, deposition of David Scott, the transcript of which is attached to Zurich's Motion for Summary Judgment.

14). On July 10, 2006, Zurich denied Defendant's claim for UM benefits under the Zurich policy, but on November 31, 2006, Defendant demanded $3,000,000 from Zurich in settlement of her claim under the UM provision of the Zurich policy. (Jt. Stip. Of Facts, ¶¶ 15-16). Zurich filed this declaratory judgment on March 12, 2007, seeking a determination that Smith was not eligible to receive any UM benefits under the Zurich policy. (*See* Complaint). Defendant subsequently filed a Counterclaim against Zurich, asserting claims for breach of contract and bad-faith failure to pay Defendant's claim under the policy. (*See* Counterclaim).

**ARGUMENT**

**A.    Smith Was Not Insured Under the Zurich Policy's Liability Coverage Section.**

Smith was not entitled to UM coverage under the Zurich policy because he was not an insured under the liability portion of the policy and because at the time of the accident he was not occupying a covered vehicle for purposes of the policy's UM coverage. It is undisputed that Smith was driving a truck which he owned at the time of the accident, and the Zurich policy expressly does **not** insure employees of Boan, either for liability or UM purposes, while they are driving their own vehicles. Zurich therefore correctly denied the Defendant's claim for UM benefits.

The Alabama legislature has enacted a statute governing the construction and application of UM coverage in this state. Alabama's UM statute provides, in pertinent part:

> No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of Section 32-7-6, under provisions approved by the Commissioner of Insurance for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles

7

>because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage.

ALA. CODE § 32-7-23(a) (1975). As used in that provision, the term "persons insured thereunder" "refers specifically to those persons insured 'against loss resulting from **liability**' under the 'automobile liability policy.'" *Lambert v. Liberty Mut. Ins. Co.*, 331 So.2d 260, 266 (Ala. 1976) (Jones, J. concurring) (emphasis added). Alabama courts have construed this statute to mandate that the scope of UM coverage provided by an automobile policy must be coextensive with the liability coverage provided by that policy. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Reaves*, 292 So.2d 95 (Ala. 1974). In other words, any person who qualifies as an insured under an automobile liability policy is entitled to UM coverage, even though the UM coverage provided by the policy contains exclusions or other limitations that would eliminate coverage for such insured persons under the UM provisions. *Id.*

No such requirement exists, however, where the person claiming UM benefits under a policy is, like Smith in the present case, **not an insured under the policy's liability coverage portion.** *See Watkins v. United States Fid. & Guar. Co.*, 656 So.2d 337 (Ala. 1994) ("[L]iability coverage is a precondition for the existence of UM coverage"). As a result, where the injured person making a claim for benefits is not covered under the liability provisions of the policy at issue (as Smith was not covered here), he is not entitled to UM coverage unless the policy expressly provides it to him (which the Zurich policy did not do for Smith here). *See Id.*; *Insurance Co. of N. Am. v. Thomas*, 337 So.2d 365 (Ala. Civ. App. 1976); *McCullough v. Standard Fire Ins. Co. of Am.,* 404 So.2d 637, 639 (Ala. 1981) (affirming summary judgment in favor of insurer and holding that policy in question provided no UM coverage to injured claimant whom policy expressly excluded from liability coverage); *Safeway Ins. Co. of Ala., Inc. v. Hambrick*, 723 So.2d 93, 96-97 (Ala. Civ. App. 1998) (reversing trial court and holding that UM

coverage did not exist for driver excluded from definition of "insured" in policy's liability coverage section); *Illinois Nat. Ins. Co. v. Castro*, 887 So.2d 281, 284 (Ala. Civ. App. 2003) (same).

These authorities provide a simple and "common-sense" analysis of the required scope of UM coverage under Alabama law: **Only** persons insured under the liability provisions of an automobile policy are automatically eligible for UM coverage under the Alabama UM statute.[5] The rest of the world, not entitled to liability coverage under the policy in question, is not entitled to UM coverage under that policy. With regard to the rest of the world, the insurer is free to provide UM coverage to no one, or it may provide coverage to some, even though they are not covered for liability purposes. This determination of who among the rest of the world is an insured for UM purposes is governed exclusively by the UM provisions of the policy. These provisions may not eliminate any person from UM coverage who is covered for liability coverage, but they can **exclude the rest of the world from UM coverage.** At the time of his accident in the present case, Smith was a member of the "rest of the world" who was not covered for liability purposes, and so not automatically covered for UM purposes. The Zurich policy's UM provisions did not extend UM coverage to him. Thus, not being automatically covered for UM purposes (because he was not an insured for liability coverage), and not being specifically provided UM coverage under the definition of "an insured" in the policy's UM endorsement, Smith was not eligible for any UM coverage under the Zurich policy.

In *Watkins, supra,* the claimant ("Watkins") was injured by an uninsured motorist while standing beside a truck, which was owned by his employer and insured under a business

---

[5] The Alabama UM statute expressly allows a named insured under an automobile policy to reject UM coverage if it so desires. ALA. CODE § 32-7-23 (1975) ("[T]he named insured shall have the right to reject such coverage."). Smith presumably rejected UM coverage under his personal automobile policy, since the Defendant has testified that she and Smith had no such coverage of their own. (Defendant dep., pp. 37-38).

automobile policy issued by USF&G. Watkins eventually sought UM benefits under two different USF&G policies, but only one of those policies is relevant to the issues presented here. Watkins had loaned a tractor owned by him to Transamerican Equipment, his employer's affiliate, and the USF&G automobile policy was applicable to that tractor. Watkins made a claim for UM benefits under Transamerican Equipment's policy. Just as Zurich has done in the present case, USF&G denied the claim for UM benefits under Transamerican Equipment's policy, among other reasons, on the grounds that Watkins was not an insured under the liability portion of that policy and therefore was not entitled to UM benefits. *Watkins*, 656 So.2d at 338. The trial court entered summary judgment for USF&G, and Watkins appealed.

On appeal, the Alabama Supreme Court acknowledged the general rule that, unless the insured rejects UM coverage offered to him, "the classification of an 'insured' under the UM coverage of that policy must be at least as broad as the coverage under the bodily injury liability provisions of the same policy." *Id.* at 339. As the Court noted, however, where there is no liability coverage, there can be no UM coverage. In other words, "**liability coverage is a precondition for the existence of UM coverage**." *Watkins*, 656 So.2d at 339-40 (emphasis added). The Court therefore looked to the policy's Liability Coverage section's definition of "Who is an Insured," which was identical to that in the Zurich policy at issue in the present case. *Id.* at 340. The Court noted that an "employee" of the named insured is not an insured under the liability provisions if the "covered auto" at issue is owned by that employee. Holding this language to be unambiguous, the Court determined that Watkins was **not** an insured under the liability provisions of the Transamerican Equipment policy because he was the owner of the tractor alleged to be a "covered auto" under that policy. *Id.* The Court further held that, because Watkins was not an insured for liability purposes, he was also **not** eligible for UM benefits under

that policy. *Id.* As the Court said in distinguishing the case before it from the general rule established in *Reaves,* "the fact that, under the UM coverage statute, Mr. Watson would have been entitled to UM coverage benefits under the. . .policy **if he were** a person insured under that policy simply does not establish that Mr. Watkins **was** a person insured under that policy." *Id.* (emphasis added); *see also Lambert v. Liberty Mut. Ins. Co.*, 331 So.2d 260, 264 (Ala. 1976) (declining to apply Alabama UM statute to find UM coverage because "this 'insured' is simply not a 'person insured thereunder' so that [UM] coverage is mandated for him under the statute").

Similarly, in *Thomas*, 337 So.2d at 369, the appellate court reversed a judgment finding that UM coverage existed under a policy issued to a trucking company **because the claimant "is not an insured under the general liability coverage" of that policy**. (Emphasis added). The Liability Coverage section of the policy at issue in *Thomas* defined "insured" only as the named insured, the named insured's affiliates and subsidiaries, and those companies' officers and directors. *Id.* The appellate court found that the claimant, a driver who had contracted to haul loads for the named insured, did not fit within this definition. *Id.* As a result, the court held that the claimant "is not an 'insured' under the terms of the [UM] statute or the policy, and that recovery [of UM benefits] is therefore barred. . . .this issue is dispositive." *Id.*

The opinions in *Watkins* and *Thomas* are likewise dispositive of the issue of Smith's alleged entitlement to UM coverage in the present case. Because Smith undisputedly was not an insured under the liability portion of the Zurich policy, no coverage existed for him under the policy's UM endorsement. The Zurich policy defines "who is an insured" for liability purposes to include anyone driving a covered auto owned, borrowed or hired by Boan with Boan's permission, **except "[Boan's] 'employee' if the covered 'auto' is owned by that 'employee**.'" (Zurich policy, Business Auto Coverage Form, § II, A, 1, b) (emphasis added). It

11

could not be clearer that Smith does not qualify as an insured under these terms because he was not at the time of the accident "using with [Boan's] permission" an automobile owned, hired, or borrowed by Boan. Instead, he was using his own truck, which he had chosen to drive to the job site that week in order to be able to leave work to visit family if and when he so desired.

Even if Smith had been in a covered auto, which he was not, he was specifically excepted and excluded from the definition of "an insured" for purposes of the Liability Coverage section because he was the owner of the vehicle involved in the accident. As an employee of Boan, operating his own personal vehicle, he was not an insured under the Liability Coverage section of the Zurich policy while driving an automobile that was owned by him or a member of his household. Thus, it cannot disputed that Smith was not insured under the liability portion of the Zurich policy. Smith consequently does not satisfy the precondition for the existence of UM coverage established by Alabama law, and no such coverage is available to his estate. *See Watkins*, 656 So.2d at 339-40.

### B. The Zurich Policy's UM Endorsement Expressly and Validly Excluded Smith from Coverage.

The Zurich policy's UM endorsement contains its own "who is an insured" and "covered auto" definitions, both of which contain different definitions of those terms than the Liability Coverage section. Smith, however, does not qualify as an insured under those provisions, either. For purposes of the UM endorsement, an insured is "Anyone 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.'" (Zurich policy, Alabama Uninsured Motorists Coverage Endorsement, § B, 2). Crucially, the policy provides that "Only those 'autos' **[Boan] own[s]**" qualify as covered autos for purposes of UM coverage. (Zurich policy, Business Auto Coverage Form, p. 1) (emphasis added). Smith was not driving a vehicle owned by Boan at the time of the accident and, therefore, was not "occupying a covered auto"

12

within the meaning of the UM endorsement. For there to be a temporary substitute vehicle under this provision, "the covered 'auto' must be out of service because of its breakdown, repair, servicing, 'loss' or destruction." (Zurich policy, Alabama Uninsured Motorists Coverage Endorsement, § B, 2). There is no evidence that the Boan company truck Smith had previously driven back and forth to the Florida job site was out of service for any of these reasons. To the contrary, the undisputed evidence shows that that Boan company truck was in service at the time. Boan employee Doug Boutwell testified that he drove it the Florida job site only a few days before Smith's accident. (Boutwell, dep., p. 24). Smith chose to drive his own, personal vehicle that week, rather than a vehicle owned by Boan, for his own, personal reasons. Specifically, he drove his own truck so that he could visit his son and daughter-in-law, who were expecting twins, in Louisiana, and so he could leave the Florida job site at any time in order to visit them when the babies were eventually born. Smith consequently was not driving his truck as a "temporary replacement vehicle" for any auto owned by Boan under the terms of the UM endorsement.

This case thus does not present a situation in which Zurich is attempting to apply a policy exclusion to deny coverage to Smith that would otherwise have existed. That is, this is not a case in which the party claiming UM benefits qualifies as an insured under the relevant policy's liability coverage but, because of more restrictive language in the policy's UM provisions, the insurer declined the claim for UM benefits. Rather, the terms of the Zurich policy establish beyond dispute that **Smith does not qualify as an insured for liability purposes because he was occupying his own vehicle, and not one owned by Boan, at the time of the accident.** Because Smith is not an insured under the Zurich policy's Liability Coverage section, the UM statute does not apply, and the policy can limit or eliminate any UM coverage it might provide to

Smith. The present case is thus materially distinguishable from *Reaves, supra,* and its progeny. In *Reaves*, the claimant undisputedly qualified as an insured under the liability portion of the policy in question, and the court interpreted the UM statute to prohibit the insurer from removing a person clearly covered by the liability part of the policy from coverage under the policy's UM provisions. *Reaves*, 292 So.2d 95 (Ala. 1974).

Here, in contrast, the denial of Defendant's claim for UM benefits comports with the long line of Alabama authorities holding that the primary, overriding factor determining whether an individual is entitled to UM coverage is whether that individual qualifies as an insured for purposes of liability coverage under the policy in question. *See Watkins*, 656 So.2d at 339-40; *Thomas*, 337 So.2d at 369; *McCullough,* 404 So. 2d at 639; *Hambrick,* 723 So. 2d at 96-97; *Castro* 887 So.2d at 284; *Lambert*, 331 So.2d at 266-67 (Jones, J. concurring).[6] In *Lambert*, Justice Jones confirmed that the "persons insured thereunder" to whom the Alabama UM statute guarantees UM coverage are limited "specifically to those person insured 'against loss resulting from liability' under the 'automobile liability policy.'" 331 So.2d at 266-67. With respect to those persons not insured against loss from liability, "**the extent of coverage for uninsured motorist protection can be limited by the terms of the contract**." *Id.* (emphasis added).

With respect to the Zurich policy in the present case, Smith is a not a "person insured thereunder." Consequently, the limitations established by the terms of the policy on any UM coverage provided to Smith by that policy are valid and enforceable. *Id.* As a result, Smith was not entitled to UM coverage under the Zurich policy, and Zurich properly denied defendant's claim for UM benefits. Zurich is therefore entitled to summary judgment in its favor

---

[6] In *Sullivan v. State Farm Mut. Auto. Ins. Co.*, 513 So.2d 992, 996 (Ala. 1987), the Alabama Supreme Court approved a trial court's reliance upon Justice Jones's concurring opinion in *Lambert* when determining whether a particular claimant was entitled to liability coverage, and therefore to UM coverage, under the policy at issue.

as to both its claim for declaratory judgment and Defendant's counterclaim for breach of contract.

### C. Defendant's Counterclaim for Bad Faith Fails as a Matter of Law.

Zurich has not acted in bad faith, and the Defendant's counterclaim for bad faith failure to pay her claim under the policy is also due to be dismissed. As a matter of law, there can be no claim for bad faith against an insurer where the insurer has not breached the contract of insurance at issue. *See Federated Mut. Ins. Co., Inc. v. Vaughn*, 961 So.2d 816, 820 (Ala. 2007). "To recover for bad-faith. . .the insured must show that the insurer breached the insurance contract when it refused to pay the insured's claim." *Id.* An insurer that did not breach the insurance contract is therefore entitled to summary judgment on a claim of bad-faith failure to pay. *Id.*; *see also Cherokee Ins. Co. v. Sanches*, 2007 WL 1576106, at *9 (Ala. June 1, 2007) (ordering summary judgment for insurer on claim of bad-faith failure to pay where exclusion relied upon by insurer to deny coverage was held to be applicable). In the present case, Zurich properly denied Defendant's claim on the grounds that Smith was not an insured under the Zurich policy. Zurich did not breach its contract with Boan, and Defendant's bad faith claim consequently fails as a matter of law.

### CONCLUSION

The proper result in this case is clear and depends upon only a few, undisputed facts. Smith, a Boan employee, was driving his own truck at the time of his accident. Smith was therefore indisputably not an insured for purposes of liability coverage. Under Alabama law, liability coverage is a precondition for the existence of UM coverage under the state's UM statute. Because the Zurich policy did not insure Smith for purposes of liability, the policy was free to limit the UM coverage it provided to him. At the time of the accident, Smith was not in a

covered auto as defined by the policy's UM endorsement, and the limiting effect of that definition is valid and applies.  Smith therefore was not entitled to UM benefits under the Zurich policy, and Zurich's motion for Summary Judgment is due to be granted.

>Respectfully submitted,
>
>/s/ Vernon L. Wells, II_____
>Vernon L. Wells, II (asb-2950-l35v)
>
>/s/ J. David Moore_____
>J. David Moore (asb-8552-r70j)
>
>Attorneys for Plaintiff
> Zurich American Insurance Company

OF COUNSEL:
Walston, Wells & Birchall, LLP
1819 5th Avenue North, Suite 1100
Birmingham, Alabama 35203
Telephone: (205) 244-5200
Telecopier: (205) 244-5400
E-mail: vlw@walstonwells.com
         jdm@wasltonwells.com

16

## CERTIFICATE OF SERVICE

      I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**Christopher M. Sledge**
**Woodard, Patel & Sledge**
**1213 East Three Notch Street**
**Andalusia, Alabama 36420**

This the 10th day of March, 2008.

                                                        /s/ J. David Moore_____
                                                        OF COUNSEL