IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) CASE NO.: 2:07-cv-216-MEF ) |
| JUNIORETTE GRIFFIN SMITH, as Administratrix of the Estate of Roger Dale Smith, deceased, | ) ) ) ) |
| Defendant. | ) ) |

**DEFENDANT'S BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Juniorette (Junie) Griffin Smith, as Administratrix of the Estate of Roger Dale Smith, deceased, and files this brief opposing plaintiff's motion for summary judgment.

**Introduction**

Defendant Smith agrees with plaintiff Zurich's premise in its brief that the issue for review is whether Defendant's decedent, Roger Smith was an insured under the Business Automobile Policy issued by Zurich to Boan Contracting, Smith's employer. For the reasons contained in this brief, Defendant Smith disagrees with Zurich's conclusion and asserts Roger Smith was an insured of Zurich at the time of his fatal automobile crash on September 8, 2005.

**The Zurich Business Auto Policy**

The Zurich Business Auto Policy in this case provides Zurich will pay all sums Boan Contracting is legally required to pay "caused by an `accident' " and resulting from the "ownership, maintenance or use of a covered `auto.' " For liability purposes, a "covered auto" is

1

designated as the symbol "1," which is defined in the policy as "any `auto.' " Therefore, under the plain terms of the policy, the policy covers Boan Contracting's and its employee, Roger Smith's, liability arising out of an accident and resulting from the "use of""any auto."

A review of the declarations of the policy, under Item Two, "Schedule of Coverages and Covered Autos" provides:

> This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos." "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form next to the name of the coverage." See, Zurich Commercial Auto Insurance Policy, "Declarations," "Schedule of Coverages and Covered Autos." (Page 16 of 44 of the July 20, 2007 Submission, Document 22)

One column of the chart in Item Two lists different coverages that are available under the policy, including liability, personal injury (P.I.P.), added P.I.P., property protection insurance, auto medical payments, uninsured motorists, underinsured motorists, and physical damage coverages.

The next column on the chart in Item Two states, under "COVERED AUTOS" that "Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos." Id.

Under the second column on the policy at issue, the number "1" is entered opposite the liability coverages and the number "2" in entered opposite the uninsured motorists, and underinsured motorists sections on the chart.

The meaning of the number or symbol "1", which is inserted opposite the liability coverages, is set forth on the coverage endorsement to the policy. See, Zurich Commercial Auto Insurance Policy, "Business Auto Coverage Form," "Description of Covered Auto Designation

Symbols." (Page 19 of 44 of the July 20, 2007 Submission, Document 22)

The separate coverage endorsement states, under "SECTION I - COVERED AUTOS," that:

> Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos." The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos."

Id.

Under Section I, the separate coverage endorsement page of the policy shows a two-column chart, with one column listing the numbers "1" through "9" and the second column stating "Description Of Covered Auto Designation Symbols." A comparison of the symbol 1 that appears on this chart reflects that a "1" designation means "any 'Auto'" under the "Schedule of Coverages and Covered Autos."

Meanwhile a comparison of the symbol 2 that appears on this chart reflects that a "2" designation means "owned autos only" under the "Description of Covered Auto Designation Symbols." See, Page 19 of 44 of the July 20, 2007 Submission, Document 22.

### Alabama Law Regarding Policy Construction

"It is fundamental that insurance contracts are to be "construed liberally in favor of the insured and strictly against the insurer." Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996). In this case, Zurich's policy distinctly states "any auto" is an insured under the Boan Contracting policy. For example, if Roger Smith had lived and was guilty of negligence in this accident, it is clear under the Zurich policy both Smith and Boan Contracting would be insureds

under the policy.

An additional element of construction in this case is the maxim that any language of an insurance contract that is susceptible to more than one interpretation must be construed in favor of coverage for the insured. St. Paul Fire & Marine Ins. Co. v. Edge Memorial Hospital, 584 So.2d 1316, 1322 (Ala.1991), (citing National Union Fire Ins. Co. v. Leeds, 530 So.2d 205, 207 (Ala.1988).  Here, the contract of insurance provides two separate outcomes for whether Roger Smith was an insured at the time of death and as such the courts have said that "Where there is an ambiguity in the contract, or where the contract is inconsistent with a state statute or law, it must be construed in favor of the insured.  Jackson v. Prudential Ins. Co. of America, 474 So.2d 1071 (Ala.1985); Turner v. United States Fidelity & Guaranty, supra; Childress v. Foremost Ins. Co., 411 So.2d 124 (Ala.1982)." Smith v. Auto-Owners Ins. Co., 500 So.2d 1042 (Ala. 1986).

### The Zurich Admission Against Interest

In the claims file produced to defendant, Zurich has admitted Roger Smith was an insured under its policy.  On December 21, 2005 Michael Boone of Zurich stated in the claims file notes:

> i've [sic] prepared a preliminary case summary on this matter as I am concerned about the courts general interpretation surrounding UM benefits.  my concern is that b/c the courts reach so far to find coverage, they may very well conclude **that b/c the vehicle itself was a covered auto under the liability policy** and the UM who is insd clause holds out anyone occupying a covered auto to be an insured, they will just brush off this notion that he's not an insured under the liability portion of the policy and find coverage for the employee.  See, attached Bates Stamp "Zurich 0381" (Emphasis added.)

Additionally, the Zurich claims file has other similar entries regarding this issue such as the following:

> 2. COVERAGE ISSUES: Reservation of rights required? Yes    If yes, date issued?
> The policy for Boan only afforded UM coverage for owned vehicles of the insured (symbol 2). However, Alabama has held that its UM statute trumps any contradictory language in the UM portion of the auto policy courts in the state have consistently held that any person who qualifies as an insured under the *liability* policy is entitled to UM coverage, regardless of whether the UM portion of the policy contains exclusions or other limitations. In our case, because Smith was driving his own personal auto, we contend that he does not qualify as an insured under the liability coverage and therefore, cannot assert coverage under the UM portion. However, because the liability coverage is afforded to "any auto" (symbol 1), it is possible that a court would rule that Smith is an insured under the policy and therefore, pursuant to case law, UM coverage would apply. Coverage counsel has estimated we have a 60% chance of prevailing on this coverage issue.

See, attached, "Zurich Bates Stamp 0317."

Between adjuster Boone's admission the Smith vehicle "was a covered auto under the liability policy" and this observation that "because the liability coverage is afforded to "any auto" (symbol 1)" it is hard to make any conclusion other than Zurich has known or accepted the fact Roger Smith was an insured under the Zurich policy.

### Zurich Cannot Limit Uninsured Coverage in Alabama

In their brief, Zurich's second position is that Roger Smith cannot recover for uninsured motorist benefits because of the symbol "2" listed on the "Schedule of Coverages and Covered Autos." (Page 16 of 44 of the July 20, 2007 Submission, Document 22)  The insertion of the symbol "2" (meaning "owned autos only" under the "Description of Covered Auto Designation Symbols," See, Page 19 of 44 of the July 20, 2007 Submission, Document 22) is a policy exclusion that is more restrictive than the uninsured motorist statute and therefore must be held "void and unenforceable." Peachtree Cas. Ins. Co. v. Sharpton, 768 So.2d 368, 370 (Ala.2000), quoting Watts v. Preferred Risk Mut. Ins. Co., 423 So.2d 171, 175 (Ala.1982).

In Alabama, an insurer may not deny the benefits provided for by the Alabama Uninsured Motorist Act by inserting provisions restricting the insured's right of recovery.  State Farm Mut. Auto Ins. Co v. Reaves, 292 So.2d 95 (Ala. 1974).   Reaves has long stood for the concept in

5

Alabama that an insurance company cannot enforce a policy that contains terms contrary to the Statute.

### **Defendant's Bad Faith Claim is Supported by the Evidence**

Historically, there was no action for bad faith available in an uninsured motorist context. In <u>Quick v. State Farm Mut. Ins. Co.</u>, 429 So. 2d 1033 at 1035 (Ala. 1983), the Court stated:

> We agree with the Florida court that there is an inherent difference in uninsured motorist coverage and first party insurance. The provisions of uninsured motorist coverage reorder the normal postures between an insured and an insurer. Thus, until the liability of the uninsured motorist has been determined, the insurer and insured occupy an adversary position toward each other.

However the Alabama Supreme Court then recognized bad faith in a UM context in <u>Sanford v. Liberty Mut. Ins. Co.</u>, 536 So. 2d 941 (Ala. 1988). The Court noted:

> [T}he various state insurance laws that establish the requirements for uninsured motorist insurance are clearly intended to benefit all insureds, and the attainment of this goal certainly encompasses requiring the fair and equitable settlement of uninsured motorist insurance claims. Unreasonable conduct by an insurer frustrates the public policy embodied in state's insurance Legislation, as well as breaching the implied-in-law duty. Thus, the standard by which the conduct of insurers is judged arguable should be higher in regard to uninsured motorist claims than it is for other first party insurance coverages. In other words, given the fact that uninsured motorist insurance is the subject of statutory requirements in forty-nine states, a persuasive argument can be made for the proposition that the duty of an insurer to act in good faith and fairly should be of the highest order in regard to claims arising under this coverage. The public interest in this coverage means that insurers should be obligated to exercise the greatest care and highest level of good faith and fair dealing. (Citation omitted.)

In this case, Zurich's admission of liability coverage in its claims file does much to support defendant's bad faith counterclaim. It is clear there was an insurance contract and by the terms of the contract Zurich was obligated to pay Estate of Roger Smith's claim. Likewise, it is

also clear Zurich intentionally refused to pay the claim and from Zurich's claim file it appears there was no reasonably legitimate, arguable or debatable reason for their refusal. See, Alabama Pattern Jury Instruction 20.37.

### Conclusion

Plaintiff Zurich is not entitled to summary judgment as a matter of law in this case. With respect to the uninsured motorist case, Roger Smith was an insured and his Estate should receive the benefits of the uninsured motorist coverage provided by the policy. There is no dispute that Roger Smith's Estate is "legally entitled to recover" damages for bodily injury or death from the tort-feasor and there is no dispute the tort-feasor was "underinsured," as that term is defined in the Alabama Uninsured Motorist Statute and the insurance policy. Accordingly summary judgment is not proper in the uninsured motorist case.

With respect to the bad faith counterclaim, Zurich has had actual knowledge since at least December 21 of 2005 that Roger Smith was an insured under the Zurich policy issued to Boan Construction but has refused to pay intentionally with no arguable reason given their admission Smith was an insured.

Defendant Juniorette (Junie) Griffin Smith respectfully requests this Honorable Court deny plaintiff Zurich's motion for summary judgment and allow this cause to go to trial.

Respectfully Submitted,

/s/ Christopher M. Sledge
Christopher M. Sledge (SLE005)

/s/ Allen G. Woodard
Allen G. Woodard (WOO047)

              **WOODARD, PATEL & SLEDGE**
              1213 East Three Notch Street
              Andalusia, AL 36420
              334-222-9115

## **CERTIFICATE OF SERVICE**

   I do hereby certify that a copy of the above and foregoing has been electronically filed with the Clerk of Court using the ECF system which will send notification of such filing to the following:

Vernon L. Wells, II, Esq.
Walston, Wells & Birchall, LLP
1819 5th Avenue North, Suite 1100
Birmingham, Alabama 35203

   DONE this 25th day of March, 2008.

              /s/ Allen G. Woodard
              Allen G. Woodard (WOO047)

1. **DESCRIPTION OF LOSS:** Insured's employee, Roger Smith, was preceding west bound on Alabama 87 approaching the intersection of County Road 16. The tortfeasor, Sylvia Carter was heading east on Alabama 87 and was wanting to turn left onto County Road 16. Carter turned suddenly into the path of Smith's vehicle striking it on the driver's side. The accident occurred at approximately 3 PM. Weather and traffic were not factors. At the time of the accident, Smith was driving his own personal auto on company business.

2. **COVERAGE ISSUES: Reservation of rights required?**  Yes      **If yes, date issued?**
The policy for Boan only afforded UM coverage for owned vehicles of the insured (symbol 2). However, Alabama has held that its UM statute trumps any contradictory language in the UM portion of the auto policy courts in the state have consistently held that any person who qualifies as an insured under the *liability* policy is entitled to UM coverage, regardless of whether the UM portion of the policy contains exclusions or other limitations. In our case, because Smith was driving his own personal auto, we contend that he does not qualify as an insured under the liability coverage and therefore, cannot assert coverage under the UM portion. However, because the liability coverage is afforded to "any auto" (symbol 1), it is possible that a court would rule that Smith is an insured under the policy and therefore, pursuant to case law, UM coverage would apply. Coverage counsel has estimated we have a 60% chance of prevailing on this coverage issue.

3. **INSURED'S NEGLIGENT ACTS OR OMISSIONS:** None

4. **INSURED'S DEFENSES:** N/A

5. **CO-DEFENDANT'S NEGLIGENT ACTS OR OMISSIONS:** (Tortfeasor – Sylvia Carter) was negligent in causing the accident in failing to yield to the oncoming vehicle driven by Smith.

6. **CO-DEFENDANT'S DEFENSES:** None

7. **CLAIMANT INFORMATION:**

| Name: Roger Smith | Age/life expectancy: 48 / 29.7 | Dependents: |
|---|---|---|
| Occupation: Foreman | Wages: information requested | Days off work: |
| Work life expectancy: 17 years | Impression as a witness: | |

Is there anything about the claimant's personal background that would affect the value of the claim, i.e. education, family, skills & hobbies, etc.? If so, what?

8. **DESCRIPTION OF INJURIES, TREATMENT, PROGNOSIS, FUTURE MEDICAL CARE & PREEXISITING CONDITIONS:**
   - Smith suffered internal injuries and died at the accident scene.

2

ZURICH  0317

Title:         reserve
Date Entered:  12-21-2005 11:54:29
Author:        Michael Boone
Category:      DAMAGES          Distribution Code:  None    Confidentiality:  No

i've prepared a preliminary case summary on this matter as i am concerned about the courts general interpretation surrounding UM benefits. my concern is that b/c the courts reach so far to find coverage, they may very well conclude that b/c the vehicle itself was a covered auto under the liability policy and the UM who is insd clause holds out anyone occupying a covered auto to be an insured, they will just brush off this notion that he's not an insured under the liability portion of the policy and find coverage for the employee. i've run some JVR and apportioning a 40% chance of verdict against the insured the risk neutral comes in at 850k. i'm forwarding this case summary to sup so we can discuss and post accordingly.

Title:         no claim presented to date
Date Entered:  12-13-2005 06:56:22
Author:        Michael Boone